```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCUS JACKSON,

                        Plaintiff,            04-CV-6067T(F)

            v.                                **DECISION
                                              and ORDER**
UNIVERSITY OF ROCHESTER

                        Defendant.
_____
```

## **INTRODUCTION**

Marcus Jackson ("plaintiff" and/or "Jackson"), an African-American male and former employee of the University of Rochester ("defendant" and/or the "University"), brings this action alleging that the University improperly discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. Specifically, Jackson contends that the University unlawfully discriminated against him with respect to the terms and conditions of his employment, harassed him because of his race, retaliated against him for complaining about defendant's discriminatory treatment and eventually terminated his employment.

The defendant has moved for summary judgment on the grounds that all of plaintiff's claims fail to set forth a *prima facie* case of discrimination and that plaintiff was terminated pursuant to a legitimate non-discriminatory reason. Furthermore, defendant argues that several of plaintiff's causes of action fail to state a claim as a matter of law. Plaintiff, who is appearing *pro se*,

Page -1-

responds that summary judgment cannot be granted because plaintiff was racially discriminated against and wrongfully terminated and has not had the "opportunity to obtain testimony or subpoena witnesses." See Plaintiff's Opposition at ¶¶ 1 and 4 ("Plaintiff's Opp."). Plaintiff further argues that "the real issues have not been addressed, nor are the University's claims true." Id.

## BACKGROUND

Plaintiff, an African-American, was employed by the defendant from approximately 1996 to January 16, 2002. He was initially hired in the nutrition department as a temporary porter and was offered a permanent job two weeks later as a tray line assistant. Plaintiff later moved on as a salad maker then as a tray change assistant and eventually he worked in the soup production department. His last position was in the Diet office where he was a Diet Clerk under the supervision of Tom Campagna and Lori Brown where he remained until January 16, 2002.

Plaintiff was a member of a union and the terms of his employment were subject to a Collective Bargaining Agreement ("CBA"). Under the CBA, any misconduct by plaintiff was subject to progressive discipline, which meant that any discipline received by Jackson would have to follow a multi-step process. Plaintiff's own exhibits reveal that he had disciplinary issues while employed at the University, including tardiness, taking unauthorized breaks and expressing inappropriate displeasure with legitimate schedule

changes. Performance evaluations dated June 8, 1998 and December 17, 1999 reveal that Jackson needed to improve his attendance and communication skills. Between January 1, 2000 and November 1, 2000, plaintiff was late to work sixteen times.

In response to plaintiff's attendance issues and consistent with the CBA's progressive discipline program, he was first given a verbal warning, then a written warning, then a two-day suspension on November 13, 2000 and finally a five-day suspension on April 20, 2001. The next step for any additional violation was termination. Plaintiff concedes the underlying attendance problems that led to the suspensions. Indeed, when plaintiff filed a grievance after the five-day suspension was issued it was not to contest the attendance problems but to question other miscellaneous counseling entries in his file that he felt were unwarranted. Plaintiff's claim was eventually dismissed.

Occasionally, plaintiff communicated work place concerns to his manager, Alfonse Caldiero. The records reflect however, that Jackson did not attribute any of his concerns to race. Significantly, Mr. Caldiero does not recall any other African-American employees complaining about differential treatment or harassment by any of plaintiff's supervisors.

In December 2001, Jackson attended the Employee Assistance Program (the "EAP") and met with one of the counselors, Joanne Dermady to discuss his work related concerns. On January 15, 2002,

Jackson returned and again met with Ms. Dermady. During that session, plaintiff told her that he would go home and get his gun if someone in the department ever made him angry. Further, plaintiff revealed that he had previously brought a gun to work with the intent to use it, but did not do so because no one upset him that day.

Based on Ms. Dermady's conversation with the plaintiff she, notified the University because she determined Jackson's threat to be credible and feared for the potential serious harm that may occur to other University employees. The University then decided that plaintiff had to be terminated. Subsequently. on January 16, 2002, Jackson was arrested by the Rochester Police and was transported to the psychiatric unit at Strong Memorial Hospital for evaluation. On the same day, the University informed plaintiff that his employment was terminated.

In plaintiff's opposition papers (and during his oral argument on July 25, 2006) he states that he does not own a gun nor does he have an arrest record. He further claims that he was falsely accused of events that never happened such as filing a false security report stating he was arrested with illegal guns. At oral argument plaintiff denied that he made the alleged threatening statements to the EAP counselor. However, in a letter sent to plaintiff dated January 16, 2002 confirming his termination, Charles A. Dye, Human Resources Manager, indicated that plaintiff's

statements regarding bringing a gun to work and using it on any supervisor or employee who made him angry was discussed with plaintiff. See Plaintiff's Opp. at Ex. 29B. In that same meeting, plaintiff did not deny making the alleged threat, but did say that his "statements were taken out of context and misunderstood." Id.

Plaintiff filed a grievance with his union to contest his termination. After proceeding through all stages of the grievance procedure, including a hearing by a neutral arbitrator from the American Arbitration Association, the arbitrator determined that his termination was for just cause.

On July 19, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the University had discriminated against him on the basis of his race and color. The EEOC issued a Right to Sue letter on October 28, 2003, finding no probable cause to the allegations made by Jackson that the University engaged or is engaging in unlawful discriminatory practices. On February 20, 2004, Jackson commenced the instant action against the University alleging that he was improperly discriminated against on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. The University answered the complaint and denied any liability.

## DISCUSSION

Defendant moves to dismiss plaintiff's complaint on the grounds that: (1) plaintiff has failed to set forth a *prima facie*

case of discrimination, or harassment on the basis of unequal terms and conditions of employment, and that his claims of at-work retaliation under Title VII was unsupported by any facts evidencing an adverse employment action; (2) that even if plaintiff has set forth a *prima facie* case of discrimination, defendant has proffered legitimate, non-discriminatory reasons for its actions;(3) that plaintiff's retaliatory discharge claim should be dismissed because the University terminated him based on his revelation to the EAP counselor that he would bring a gun to work as he had in the past and potentially harm his co-workers.  The University believed this to be a genuine threat to the immediate health and safety of its employees and not for any reason related to discrimination.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure permits the grant of summary judgment to the movant where the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  Summary judgment dismissing an employment discrimination case is warranted where the plaintiff cannot provide evidence to support an essential element of his claim.  See Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998).

### A. Failure to set forth a *prima facie* case of discrimination

Title VII provides that "it shall be unlawful for an employer to discriminate against any individual in his compensation, terms, conditions or privileges of employment, because of the individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (2002).  A Title VII plaintiff must satisfy his burden of proof through direct evidence of discriminatory intent, or by an indirect, burden-shifting scheme established by the Supreme Court in McDonnell Douglas Corp. v. Green.  411 U.S. 792 (1973).  See also  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Under McDonnell Douglas, plaintiff must initially establish a *prima facie* case of prohibited discrimination by a preponderance of the evidence.  411 U.S. at 792.  To do so, plaintiff must demonstrate that: (1) he is part of a protected class of persons; (2) he was performing his job satisfactorily; (3) he was subject to materially adverse employment action; and (4) the action took place under circumstances giving rise to an inference of discrimination. Id.  The burden then shifts to defendant to articulate a legitimate, non-discriminatory reason for its adverse actions. Once the employer has met this burden, the presumption of discrimination ceases and plaintiff has the burden to show that the employer's proffered reason for the adverse action is a mere

pretext and that the action was actually motivated by race, color, sex or national origin discrimination. At all times, plaintiff bears the ultimate burden of proof.

### 1. Protected class membership

The first element of a *prima facie* case of discrimination is the plaintiff's membership in a class protected by the statute. The fact that plaintiff is an African-American and therefore, a member of a protected class, is not in dispute.

### 2. Satisfactory job performance

In order to set forth a *prima facie* case of discrimination, a plaintiff must also demonstrate that his job performance was satisfactory. At his deposition, plaintiff did not dispute the University's allegations of his extensive history of attendance problems since he began his employment. In fact, Jackson was disciplined multiple times, including a two-day suspension on November 13, 2000 and a five-day suspension merely five months later on April 20, 2001, due to his attendance problems. In addition, Charles Dye's January 16, 2002 letter indicates that Jackson's record of disciplinary action through suspensions and written and oral reprimands would warrant his termination alone, apart from the threats made concerning the use of a weapon made to Ms. Dermady. See Plaintiff's Opp. at Ex. 29B.

Taking into consideration plaintiff's deposition testimony, plaintiff's exhibits in opposition to the summary judgment motion

and the affidavit of plaintiff's manager, Mr. Caldiero, there appears to be sufficient evidence to conclude that plaintiff's job performance was not satisfactory. Jackson's performance evaluations in June 1998 and December 1999 reveal he had problems with tardiness and attendance and needed to improve his communication skills with respect to inappropriately expressing his disagreement with legitimate schedule changes. Moreover, between January 1, 2000 and November 1, 2000, plaintiff was late to work sixteen times.

Even if the Court construes the evidence in favor of the plaintiff and assumes, for purposes of this motion, that Jackson's job performance was satisfactory, he still fails to establish a *prima facie* case of prohibited discrimination by a preponderance of the evidence because he cannot present evidence to satisfy the remaining prongs set forth in McDonnell Douglas.

### 3. Materially adverse employment action

To make out a *prima facie* discrimination case, a plaintiff must also show that he was subjected to materially adverse employment action. An adverse employment action is a "material and adverse change in the terms and conditions of employment." Galabya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be "'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. Such a change

"might be evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

There is no credible evidence presented by plaintiff that indicates that he was subjected to an unjustified materially adverse employment action by the University. However, there is no dispute that plaintiff was terminated from his employment on January 16, 2002 due to the University's legitimate concern for the health and safety of its employees, based upon a communicated threat through a credible source (Ms. Dermady) as it was here.

### 4. Circumstances giving rise to inference of discrimination

Plaintiff cannot point to any circumstance giving rise to an inference of discrimination with respect to the termination of his employment. Plaintiff concedes that his employment was routinely fraught with attendance problems resulting in two suspensions with termination as the only remaining step pursuant to the CBA. Plaintiff filed a grievance after the final suspension was issued. However, it was not to contest his attendance problems but to question other miscellaneous counseling entries in his file that he felt were unwarranted. There is no evidence that plaintiff's race was a factor in any of the disciplinary action taken for his poor attendance prior to his discharge.

While plaintiff and his manager, Mr. Caldiero discussed problems he had with his supervisors (Tom Campagna, Lori Brown and Sharon Spencer), the records show that Jackson did not attribute any of his concerns to race. Further, plaintiff never brought any racial harassment complaints through the University Human Resources department, any state or federal agency, or his union. Mr. Caldiero also does not recall any other African-American employees complaining about differential treatment or harassment by any of plaintiff's supervisors. Thus, plaintiff fails to establish how his interactions with his supervisors were discriminatory or how they influenced the University's decision to terminate him because of his race.

Plaintiff's termination took place one day after he personally revealed to Ms. Dermady (EAP counselor) that he would bring his gun to work just in case anyone upset him, and that he had previously brought a gun to work with the intent to use it, but (fortunately) did not because no one upset him that day. Ms. Dermady had no prior interactions with Jackson other than the two sessions in December 2001 and January 15, 2002 for purposes of assisting him concerning his attendance issues, which resulted in suspensions.

Finally, Jackson fails to meet his prima facie burden of demonstrating an inference of discrimination based on the makeup of the plaintiff's employing unit or the person hired to replace him. See Cuttino v. Genesis Health Ventures, Inc., 2006 U.S. Dist. Lexis

1342, at *17 (D.Conn. Jan 11, 2006); <u>Offutt v. Gannett Satellite Info. Network</u>, 1998 U.S. Dist. Lexis 19502, at *9 (S.D.N.Y. Dec. 11, 1998) (finding no inference of race discrimination where the African-American plaintiff was replaced by another African-American employee).  In this case, plaintiff has not presented evidence of race-based animus.  In direct contrast to plaintiff's attempts to infer racial discrimination are the undisputed facts that three out of the seven employees in plaintiff's unit were African-Americans and five out of the seven were minorities.  In addition, Jackson's position was filled by an Ethiopian male, which is also a member of plaintiff's protected class.[1]

Accordingly, plaintiff has failed to make out a *prima facie* case of discrimination, and plaintiff's Title VII discrimination claims should be denied.

### B. Defendant's Legitimate Non-discriminatory Reason To Terminate Plaintiff

Assuming that plaintiff did meet his burden of establishing a *prima facie* case, the burden shifts to the employer to rebut the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for the adverse employment action. <u>Burdine</u>, 450 U.S. 248 at 257.  Here, the University had a

---

[1] Plaintiff's opposition papers and statements at oral argument suggest that the fact that Roman Tesfaye, the employee who replaced him, was Ethiopian and not African-American as claimed by the University, is a disputed fact that should be considered by this Court.  Even if Mr. Tesfaye is not African-American but is Ethiopian, he is still a member of a protected class and therefore, there is no dispute on this point as suggested by plaintiff.

...
...

legitimate non-discriminatory reason to terminate Jackson because he admitted to an EAP counselor that he not only might bring a gun to work, but that he had in fact brought a gun to work in the past to potentially harm his co-workers.

### C. Plaintiff's Failure to Show Pretext

The law is well settled that once the employer has proffered a non-discriminatory reason, the presumption of discrimination is no longer part of the analysis and the employer is entitled to summary judgment unless plaintiff can prove that the non-discriminatory reason provided is a mere pretext for his discharge and that the actual reason for the adverse employment action was discriminatory. See James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). In this case, the complaint still warrants dismissal because plaintiff has not presented any evidence to show that the defendant's documented reason for termination, which were statements made by plaintiff to the EAP counselor, was a pretext for racial discrimination. His statements to the counselor concerning the potential use of a gun to harm co-employees and possibly others was sufficient reason justifying his discharge, let alone his poor attendance record.

The statement to Ms. Dermady prompted the University to act based on a good faith belief that Jackson had engaged in conduct warranting termination. See Hugley v. Art Inst., 3 F.Supp.2d 900, 907 (N.D.Ill. 1998) (holding that the employer's legitimate belief

that the plaintiff made a death threat against a fellow employee was a legitimate reason for termination); <u>Lenoir v. Roll Coater</u>, 13 F.3d 1130, 1133 (7th Cir. 1994). The University acted on what it believed to be a genuine threat to the immediate health and safety of its employees. Plaintiff cannot provide any evidence that suggests discriminatory intent, nor offer evidence that the defendant's legitimate, non-discriminatory reason for terminating him was a pretext.

    D.   <u>Retaliation Claim</u>

Plaintiff has failed to provide evidence that he complained about race-based discriminatory treatment that formed the basis for his discharge, which would support his retaliation claim. Indeed, he was discharged because of threatening statements made to Ms. Dermady, the EAP counselor, on January 15, 2002. He therefore cannot satisfy any of the following requirements of his retaliation claim.

To establish a *prima facie* case of retaliation, plaintiff must show: (1) participation in protected activities; (2) defendant's knowledge of the protected activities; (3) adverse employment action by the defendant; and (4) a causal connection between the protected activities and the action demonstrating a retaliatory motive. <u>See</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.33d 87 (2d Cir.), <u>amended</u>, 2001 U.S. LEXIS 15058, <u>cert. den.</u>, 122 S.Ct. 348 (2001); <u>Cruz v. Coach Stores Inc.</u>, 202 F.3d 560, 566 (2d Cir.

2000); <u>Johnson v. Palma</u>, 931 F.2d 203, 207-208 (2d Cir. 1991).

Plaintiff has failed to prove by a preponderance of the evidence that he was engaged in a protected activity of which the University had knowledge and for which the University discharged him in retaliation for his participation in that protected activity. Plaintiff does not provide any specific dates, nor does his Complaint refer to any particular race-related complaints he made to the University and that those complaints led to his discharge. The defendant has presented sufficient (if not compelling) evidence in support of its position that plaintiff was discharged because of his statements to the EAP counselor regarding the possible use of a gun to harm co-workers.

Apart from his statements to Ms. Dermady, the EAP counselor, there was sufficient basis for his discharge because of his pattern of tardiness over an extensive period of time. Plaintiff's own exhibits also reveal that he had disciplinary issues while employed at the University. Performance evaluations in 1998 and 1999 show that plaintiff needed improvement on his attendance and communication skills. Between January 1, 2000 and November 1, 2000, plaintiff was late to work sixteen times. He was first given a verbal warning, then a written warning, then a two-day suspension on November 13, 2000 and finally a five-day suspension on April 20, 2001. The next step for any additional violation was termination.

Many of his poor performance incidents occurred well before plaintiff's first complaint of discrimination in July 19, 2002. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001) (Court held that where gradual adverse job actions began well before plaintiff ever engaged in any protected activity, an inference of retaliation does not arise. In that case, the adverse employment actions were the ultimate product, of "an extensive period of progressive discipline" which began when defendant lessened plaintiff's job responsibilities five months prior to his filing claims with the EEOC). See also Palummo v. St. Vincent's Medical Center et at., 4 Fed.Appx. 99, 102 (2d Cir. 2001) (Summary judgment granted to defendants since they did not receive notice of the EEOC charge until one day *after* the plaintiff was notified of her termination); Nicastro v. New York City Department of Design and Construction, 125 Fed.Appx. 357, 358 (2d Cir. 2005).  Indeed, in the instant case, the first documented complaint of defendant's discriminatory behavior made by Jackson was not until after his discharge on January 16, 2002, and later in his complaint to the EEOC on July 19, 2002.

I thus find that plaintiff has failed to prove that he was discharged by the defendant in retaliation for engaging in protected anti-discrimination activities, and therefore dismiss plaintiff's claim of retaliatory discharge under Title VII.

**CONCLUSION**

I find that Jackson's claims fail to set forth a *prima facie* case of discrimination or retaliation.  Accordingly, the University's motion for summary judgment and dismissal is granted and the plaintiff's complaint is dismissed in its entirety.

ALL OF THE ABOVE IS SO ORDERED.

s/ Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 31, 2006